IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ADRIAN D.
LIVINGSTON,

                    Petitioner,

          v.                         CASE NO.  09-3056-SAC

STATE OF KANSAS,
et al.,

                    Respondents.

## MEMORANDUM AND ORDER

        This petition for writ of habeas corpus, 28 U.S.C. § 2254,
was filed by a state prisoner.  Respondents were ordered to show
cause and directed to also address the threshold issues of
exhaustion, the availability of state court remedies, and
petitioner's motion for stay and abeyance.  Respondents have filed
their Answer and Return, and petitioner has filed his Traverse.
Having considered all materials in the file including the state
court records, the court finds as follows.


## I.  FACTUAL BACKGROUND

        The original information against Mr. Livingston charged him
with First Degree Murder of S. Crockett.  State v. Livingston, 02-
CR-423 (Wyandotte Co. Dist. Ct.)(hereinafter State v. Livingston),
Court File (Rec.) at 18, 113.  A preliminary hearing was conducted
on June 7, 2002, at which testimony was received as to the shooting

death of Crockett[1].  Id.  The case was initially set for trial the week of August 26, 2002.  In July, the State subpoenaed several witnesses to testify at trial including persons present at the house during the shooting.  Rec. 107.  A week before trial, the State filed a "Motion to Endorse" the following civilian witnesses "referenced by name in Police Reports": D. Coates, V. Handy, W. Brownlee, L. Browning, B. Browning, N. Dozier, and M. Williams.  Rec. 14, 72.  That same day, defense counsel Mr. Ball[2], filed a "Request for Production" seeking an order "requiring the plaintiff to produce for inspection and copying the Police Reports and any statements made by any endorsed witnesses or, in the alternative, for its Order allowing the defendant to depose said witnesses."  Rec. 13, 81.  On August 20, 2002, District Court Judge Burdette heard arguments on the motion and allowed the endorsement.  Id.  Among the newly endorsed witnesses were three persons Livingston had previously asked his counsel to locate as possible defense witnesses: L. Browning, B. Browning, and N. Dozier.  Id.  At this hearing, Ball objected to the late endorsement and when it was allowed, moved for a continuance.  Petitioner felt pressure and agreed to the continuance so "defense counsel could investigate the

---

[1]    At this preliminary hearing Mr. F. King testified that he was visiting Crockett at the time and place of his murder, saw the defendant leaning over and whispering to Crockett, saw defendant holding a gun pointed at Crockett's head, heard a gunshot, and that he then took off running.  State v. Livingston, Transcript of Preliminary Hearing (June 7, 2002) at 6-23.  King testified that Henry and Wiggy were also at the house at the time.  Id. at 26.

[2]    Although Mr. Ball initially was retained by a friend or relative of Livingston's, there is an order in the state record appointing Ball from the panel for "indigent defense".

testimony which would be offered by these newly endorsed individuals." The docket entry provides that Mr. Livingston waived his right to a speedy trial at this hearing.[3]

On August 21, 2002, the State filed a Notice of intent to request the "Hard 50" sentence. On August 28, 2002, a First Amended Information was filed, which again charged Livingston with First Degree Murder of Crockett but added the charges of Attempted First Degree Murder and Aggravated Robbery of Coates. Id. A preliminary hearing was held on the new charges on September 19, 2002[4]. Coates and Brownlee were subpoenaed by the State for this hearing. On September 20, 2002, the State again subpoenaed several witnesses including Coates, Brownlee, B. Browning, L. Browning, and N. Dozier to testify at trial set for October 21, 2002.

On October 16, 2002, a Second Amended Information was filed charging Livingston with First Degree Murder of Crockett, Count II Attempted First Degree Murder of Coates, and Count III Aggravated Robbery of Crockett. This Second Amended Information erroneously charged aggravated robbery of Crockett, when the victim of the charged robbery was Coates. Rec. 27-28.

On October 18, 2002, a hearing was held on pretrial motions

---

[3]    The August 20 docket entry: ". . . STS MOT TO ENDORSE IS HERD & GRANTED  DEFS MOT FOR CONT IS HERD & GRANTED & DEF WAIV RIGHT TO SPEEDY TRIAL CASE TO BE RESET ALL TIME RUNS AGAINST DEF." Rec. 14.  No transcript of this hearing is among the state court records.

[4]    Correspondence in the record from a court reporter to Mr. Livingston indicates this preliminary hearing was tape-recorded.  The February 4, 2003, docket entry in the criminal case provides: "Transcript of Preliminary Hearing F8/20/02." Rec. 15.  However, no transcript of this hearing is among the records provided with the Answer and Return.

at which Judge Boeding inquired as to the status of plea negotiations. State v. Livingston, Transcript of Pretrial Motions, Vol. IV. The State's offer was for defendant to plead guilty to one count of second-degree murder and one count of aggravated robbery, with the State to drop Count II and recommend concurrent sentences. The judge informed Mr. Livingston that if found guilty of first degree murder, the sentence was life imprisonment, and he might not be eligible for parole for 25 or even 50 years. Livingston was also informed that he could earn up to 15 percent good time credit if he pled guilty to second degree murder, but not on a first degree murder conviction. Attorneys for both sides agreed that, with all things going his way, Livingston might be eligible for parole in as little as 16 years if he took the plea. Livingston "flatly refused" and insisted on going to trial.

On October 21, 2002, the day the jury trial was scheduled to begin, Mr. Livingston "suddenly changed his mind", accepted the State's offer, and a plea proceeding was conducted instead. The prosecutor announced:

> The plea agreement is that the state will file a third amended information containing two counts. Count one is second degree murder. . . . Count two is aggravated robbery . . . . At sentencing the state will agree to recommend that those two counts be run concurrently.

State v. Livingston, Transcript of Guilty Plea (hereinafter Plea T.), Vol. V, at 2-3. At this proceeding, Mr. Livingston testified that he had discussed the written plea agreement with his attorney, and that any questions had been answered to his satisfaction. Id.

4

at 5-6.  When the judge asked if he was satisfied with Mr. Ball's help, he responded, "Yeah, I guess."  <u>Id</u>. at 13.  The written agreement, which he signed at the hearing, provided that he believed his "lawyer has done all that anyone could do to counsel and assist me, and I am satisfied with the advice and help he/she has given me."  It also provided that the plea was "not the result of any force or threats against me, or of any promises made to me other than those noted in this petition."  The written agreement further provided that Livingston knew he was waiving his "right to a speedy and public trial by jury."  Judge Boeding specifically asked if defendant understood that "among the rights you have is the right to a speedy and public trial by jury", and that by entering pleas of guilty he waived his rights.  Mr. Livingston responded "Yes".  <u>Id</u>. at 7-9.  Petitioner also testified that the decision to enter a plea was his "own free and voluntary act."  <u>Id</u>. at 12.

When the court asked Mr. Livingston how he pleaded to the "charge contained in count one of this third amended information which alleges . . . that you did unlawfully, feloniously, and intentionally, but without premeditation, kill a human being, to wit: Shawn Crockett . . ," he responded "Guilty."  <u>Id</u>. at 14.  When the judge asked how he pleaded to "count two which alleges . . . that you did unlawfully, feloniously, and willfully take property, to wit: Money, from another person, to wit: Shawn Crockett, by force while you were armed with a dangerous weapon, to wit: a firearm . . , " he responded: "Guilty, I guess", and when

questioned again, "Guilty, man." Id. at 14-15.

The prosecutor, Mr. Rhodes, then summarized what would have been the State's evidence at trial:

> On March 13th of 2002 at about noon time the defendant was at a residence . . . in Wyandotte County . . . . Other people inside that residence at that time included (Crockett, Coates, King, Johnson and Williams).
>
> While the defendant and those other people were there, the testimony would have been that the defendant engaged in some arguments both with (Coates) and with (Crockett).
>
> The testimony would have been by the state's witnesses that at one point the defendant leaned over and looked like he was arguing with (Crockett). He then pulled a gun from his waistband area, shot (Crockett) in the head . . . . at which point the rest of the witnesses in the house at that time, except (Coates), ran out of the house.
>
> (Coates) would have testified that after they ran out of the house, the defendant turned the gun on him, the handgun that he was holding, and then the two of them, (Coates) and the defendant, began to struggle over a shotgun that was already in the house there.
>
> (Coates) would have testified that the defendant actually got control of that shotgun and pointed it at (Coates), told him to get on his knees and beg for his life. And once he did that, the defendant put the shotgun to his head and told him to come with it. (Coates) would have testified that what he understood that to mean is that he was supposed to hand over any cash that he had on him. He would have testified he had $8000 in cash on him . . . and that he threw the money in the defendant's face and ran out of the house at which time the defendant actually tried to fire the shotgun at him, but the shotgun didn't fire. . . .

Id. 15-17. The court asked Mr. Livingston: "Do you substantially agree with what he said as to what it is that you did that makes

6

you guilty of these two charges?" Livingston responded: "Yes". Id. at 19. The court found defendant guilty of the crime of second degree murder as charged in count one of the "third amended information" and of aggravated robbery, as charged in count two "[b]ased upon the defendant's pleas of guilty and the factual basis" provided. Id.

On October 23, 2002, another amended information was filed that charged Count I as second degree murder of Crockett and Count II as aggravated robbery of Coates. Rec. 31. This was the Third Amended Information, which the plea agreement had expressly provided would be filed. The record indicates Mr. Livingston had a copy of the Third Amended Information before him at the plea proceeding.

Within days of pleading guilty, Mr. Livingston contacted Mr. Ball to withdraw his plea. On December 3, 2002, Mr. Ball filed a Motion to Withdraw Guilty Plea, as well as a motion to withdraw as counsel and for appointment of new counsel. Mr. Dent was appointed to represent Livingston on his motion to withdraw and at sentencing. The actual motion to withdraw did not set forth grounds other than "good cause exists." Rec. 37. On January 24, 2003, the trial court held an evidentiary hearing on this motion at which Livingston and Ball testified[5]. Judge Boeding ruled from

---

[5]     Mr. Livingston, when called by his counsel, testified as follows: Mr. Ball and he had discussed plea offers on several occasions. Six days before trial, Ball informed him of an offer from the DA "for like 19 years" and advised him to "think about it real hard" because he "could do 50 years" and be very old when he got out; but Livingston responded that he wanted to go to trial. They had daily contact up to trial because Mr. Ball was trying to find "some of the witnesses, state's witnesses, and he couldn't find them." Plea T. at 15.

Livingston did not know where these people were, but he again refused to take the plea on Friday, because he "wanted to go to trial and plead his case". <u>Id</u>. at 16.  Mr. Ball had discussed the case with him and the possible evidence.  The morning of trial, with the jury waiting, defendant and Ball were in a conference room when Mr. Ball stated:

> this is the day of trial and I want you to think real seriously before we go in there because it's looking kind of bad for you. . . .  I would suggest that you take the plea because I don't think you're going to be able to beat this – well, you're going to be able to get acquitted of first degree.  If anything, you'll probably get found guilty of second degree and then the DA more than likely is going to try to push for the Hard 50 or 25 years.  If you take the plea for 19 years, you'll be out by the time you (sic) 48 or 45.

<u>Id</u>. at 17.  Livingston stated he would rather go to trial because there were "flaws in the case" and there would be no problem for the jury to believe him.  Mr. Ball responded that defendant had no witnesses and no alibi and it would be best for him to take the plea.  Ball left for a few minutes, and Livingston talked with the investigator who also encouraged him to take the plea offer.  Mr. Livingston testified at that point he thought Ball "was feeling ineffective . . . or . . . ill prepared to do the job of defending me," and like Ball has lost faith in himself to do a good job.  <u>Id</u>. at 20.  When asked what led him to believe his attorney was ill prepared he testified:

> . . .[H]e said he couldn't catch up with the witnesses to talk to them.  I mean I gave him the addresses and all that, but he said it wasn't nobody made no contact with him.  So I gave him the information I had from when I last seen 'em, but he still came up with a zero.  But he said himself he was thinking . . . that if I went to trial, I would more likely get convicted than I would get acquitted.

<u>Id</u>.  Livingston also testified that Mr. Ball never said he wasn't prepared, and said if they went to trial, he would try his best to defend Livingston.  <u>Id</u>.  Livingston further testified:

> I felt like I had a for sure thing because I had studied, . . . I remembered in my head what was said in preliminary and I wrote down my own questions . . . for the witnesses and so I felt pretty good about going to trial. . . .

<u>Id</u>. at 21.  He testified that after their conversation in the deliberation room:

> . . . I kind of felt . . . he was gonna be like a bad choice to go to trial.  Not only that, . . . I just kind of lost faith in him, like he just ran out of gas or something, you know, and just felt unsure he was gonna be ready or really be sincere about defending me because he already said that he felt like he wasn't gonna win the case.

<u>Id</u>. at 22.  He testified that he then decided to take the plea, because they were looking at it as if he "was already convicted" and "wasn't gonna win." <u>Id</u>. at 23.  Thus, he testified that he pled guilty because he believed their assessment that he did not have a good chance of winning at trial.  He agreed to his counsel's summation of his testimony as:

> You feel you should be allowed to withdraw your plea because you basically took the plea because of what Mr. Ball said to you prior

the bench as follows:

> [I] do not believe that the evidence supports any allegation that the defendant did not know what he was doing at the time that he entered into the plea or that he had been forced or coerced or anything of that nature . . . . I believe at the time that plea was entered into, the defendant knew what he was doing, wanted to do that and thought at that time that it was in his best interest.
>
> I believe Mr. Ball did a good job in representing the defendant in this case. . . . [M]r. Ball, who's been around a long time, certainly has the ability to evaluate the evidence in a case and to make some sort of informed prediction as to what could happen . . . .
>
> And it sounds to me like Mr. Ball had made a reasoned judgment in this case that he thought the likelihood would be that his client would be found – could be found guilty of first degree murder. If, in fact, that would have happened . . . (he) . . . could be facing a prison sentence where he would not be eligible for parole until after serving 50 years. And in the alternative, if the Hard 50 was not imposed that he would still be facing a much . . . longer sentence than if he took the plea. . . .
>
> I remember . . . that day . . . , and I think Mr. Ball was prepared to try the case just from my recollection as everybody was assembling, we had got the jury questionnaires, everybody was just getting ready to try that case and I was surprised as anybody when Mr. Ball told me that the defendant wanted to do the plea.
>
> So I believe that essentially what we have here today is that Mr. Livingston has changed his mind at this point for whatever reason, but I don't believe that it raises to the level that the court should permit him to withdraw the plea and the motion to withdraw the plea is denied.

---

to trial and you felt that he wasn't prepared for trial . . . and, therefore, you had no option but to take a plea.

Id. at 36.

9

<u>Plea T.</u> at 85-87.  The KCOA aptly summarized the judge's findings as Livingston had not established good cause to withdraw his plea, had knowingly entered the plea without coercion, and was represented by competent counsel.  <u>See</u> <u>Livingston v. State</u>, No. 98,827, *2-*3 (KCOA, May 30, 2008, unpublished).

The judge proceeded to sentencing and followed the plea agreement.  He announced that count one, second degree murder, would be the base offense for sentencing purposes, and that it was a presumptive imprisonment sentence of 214 months, and that count two, aggravated robbery, had a presumptive sentence of 59 months.  He imposed the presumptive sentences on each count, and ordered the sentences to run concurrent.  The judge asked if there was anything Mr. Livingston would like to say before sentence was imposed, and he responded, "No, sir."  <u>Plea T.</u> at 95.

Livingston filed a Notice of Appeal.  An Assistant Appellate Defender was appointed to represent him.  The Kansas Court of Appeals (KCOA), affirmed on November 22, 2004.  The docket of the Kansas Appellate Courts in Case No. 91362 indicates Mr. Livingston filed a Petition for Review in the Kansas Supreme Court, no additional briefs were docketed, and that the Petition for Review was summarily denied on March 1, 2005.

On November 16, 2005, petitioner filed a pro se motion pursuant to K.S.A. § 60-1507 in the trial court together with a

Brief in Support that had copies of transcript excerpts attached[6]. The motion was denied after an evidentiary hearing on May 19, 2006, at which petitioner testified. The denial was appealed to the KCOA, which affirmed on May 30, 2008. A Petition for Review was denied by the Kansas Supreme Court on September 22, 2008.

## II. EXHAUSTION AND MOTION FOR STAY AND ABEYANCE

In order to determine whether or not Mr. Livingston has fully exhausted state court remedies on his federal claims, and to decide his Motion for Stay and Abeyance the court has had to determine precisely what claims are presented in his federal Petition and what claims he raised on direct appeal and on appeal in his state post-conviction proceedings. Claims raised only at the trial court level, and not properly presented to the highest court of the state are not fully exhausted. Thus, the crucial question in determining exhaustion of state court remedies is what claims were presented to the Kansas appellate courts.

The claims raised in this federal Petition were set forth the court's prior Order. They may be summarized as: (1)

---

[6]    In this pro se brief, Livingston listed six issues: (1) trial counsel was ineffective for failing to conduct an adequate investigation before and after continuance, which forced defendant to waive his right to trial within 90 days and to plead guilty; (2) trial counsel was ineffective in that he erroneously advised defendant to plead guilty when defendant had a meritorious speedy trial claim; (3) trial counsel misrepresented the plea bargain and used his investigator to induce defendant to plead guilty; (4) trial counsel was ineffective during plea negotiations in that he failed to object, challenge, or correct the court when it accepted defendant's plea to an invalid information; (5) the court was without jurisdiction to accept his plea due to the speedy trial violation; and (6) the complaint was defective in that the statutory language of "who inflicts bodily harm upon any person in the course of such robbery" was omitted.

ineffective assistance of trial/plea counsel based on underlying claims of a speedy trial violation and failure to discover State's evidence and potential witnesses; (2) petitioner's plea was not knowing and voluntary in that he was not advised of his viable speedy trial defense prior to entering his plea; (3) "ineffective assistance of appellate counsel"; and (4) the trial court abused its discretion in state collateral proceedings by finding that the testimony of certain witnesses would have been inadmissible hearsay.

The claims presented to the Kansas appellate courts on direct appeal are discerned from the Brief of Appellant prepared by new appointed counsel after consultation with Mr. Livingston, and the opinion of the KCOA. The Brief generally listed two issues for appeal: (1) the district court abused its discretion in denying Livingston's motion to withdraw plea, and (2) in ordering restitution with no evidence as to amount. See Brief of Appellant, State v. Livingston, 02-CR-423, Kan.App.Ct. No. 91362 (Apr. 8, 2004). Before the State filed its brief, Mr. Livingston submitted a pro se motion to file supplemental pro se brief, which was denied. The KCOA in its unpublished opinion on direct appeal, noted Livingston was appealing the district court's denial of his motion to withdraw plea and had argued good cause existed "because (1) he felt compelled to plea after losing confidence in his attorney, and (2) he believed he was only pleading to second degree murder." State v. Livingston, Kan.App.Ct. No. 91362, at *3 (Oct. 22, 2004). They also noted that Livingston argued on direct appeal

that Ball's performance was deficient "because Ball expressed doubts concerning Livingston's success at trial," and led Livingston to understand that the aggravated robbery charge would be dropped after the plea hearing. Neither of these grounds is presented in Livingston's federal Petition.

The claims presented to the Kansas appellate courts on collateral appeal are discerned from the Brief of Appellant filed in those proceedings and the opinion of the KCOA. In this Brief, the single issue was stated as: "Was counsel ineffective because he did not locate or compel the witnesses to testify about the contract to kill Defendant or file Defendant's motions for discovery?" Brief of Appellant, Livingston v. State, 05-CV-1808, Kan.App.Ct. No. 98827, at iii (August 10, 2007). In its Memorandum Opinion on this appeal, the KCOA summarized Mr. Livingston's claims as: "his counsel was ineffective in failing to locate and compel testimony from several witnesses and for permitting Livingston to plead guilty to a charge which incorrectly identified the victim." Livingston v. State, Kan.App.Ct. No. 98827, at *2.[7] The KCOA more "specifically" described the former claim as that "he was coerced

---

[7] The claim that counsel was ineffective for allowing Livingston to plead to the erroneous information is not presented in the federal Petition. With respect to this claim, the KCOA found it arose when the judge at the plea proceeding read from the amended information which erroneously named the victim of the aggravated robbery. They held that Livingston "clearly was aware at the time of his direct appeal of the factual basis" for this claim, and did "not identify any exceptional circumstances justifying his failure to raise the issue on direct appeal." Id. at *11. In addition, they held that the district court had properly disposed of this claim on the merits finding defendant clearly understood the offenses to which he was pleading and the victim of each offense." Id. at *12. They found Livingston had pled guilty to the correct names and charges because the State presented the correct factual basis for the plea, and the information was thereafter corrected by amendment. Id. at *10.

by his counsel into pleading guilty due to counsel's failure to investigate and interview witnesses." Id. at *4.

Respondents contend in their Answer and Return that petitioner procedurally defaulted three of his claims and that his fourth claim involves an issue of state evidentiary law that is not cognizable in federal habeas corpus.

Having carefully reviewed the entire record before it, the court finds that the four grounds raised by Mr. Livingston in his federal Petition have either been exhausted, or procedurally defaulted in state court, or are clearly without merit and may be dismissed on that basis. The reasons for this finding shall be set forth in connection with the discussion of each claim herein. Based on this finding, the court concludes that no purpose would be served by staying this federal action and holding it in abeyance while petitioner pursues relief in the state courts. Accordingly, petitioner's Motion for Stay and Abeyance shall be denied. The court proceeds to consider the merits of each of petitioner's claims to the extent necessary.


## III.  GENERAL STANDARDS OF REVIEW

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super state appellate court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984). When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. §

2254 it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." Id. The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern the court's review of a petitioner's claims. Under AEDPA, an applicant is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[8]." 28 U.S.C. § 2254(d)(1)-(2); see also Williams v. Taylor, 529 U.S. 362, 404-05 (2000)(citing § 2254(d)); Hale v. Gibson, 227 F.3d 1298, 1309 (10th Cir. 2000). Factual findings made by the state trial and appellate courts are presumed correct, with petitioner having the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Darks v. Mullin, 327 F.3d 1001, 1007 (10th Cir.), cert. denied, 540 U.S. 968 (2003); Smallwood v. Gibson, 191 F.3d 1257, 1265 (10th Cir. 1999)(citing § 2254(e)(1)).

Pursuant to Rule 8 of the rules governing section 2254 proceedings, the court finds an evidentiary hearing is not required in this case. A habeas petitioner is entitled to an evidentiary hearing on the issue of ineffective assistance of counsel "so long

---

[8]    Mr. Livingston generally asserts that state court decisions in his case were "based on an unreasonable determination of the facts in light of the evidence presented."

as his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief." <u>Hammon v. Ward</u>, 466 F.3d 919, 927 (10th Cir. 2006)(internal quotation marks and citations omitted). Consistent with this standard, "an evidentiary hearing is unnecessary if the claim can be resolved on the record." <u>Anderson v. Attorney Gen. of Kansas</u>, 425 F.3d 853, 859 (10th Cir. 2005); <u>see</u> <u>also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007)("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). As the court has determined that petitioner's allegations are contravened by the factual record and he is not entitled to habeas relief, it finds that petitioner is not entitled to an evidentiary hearing.


**IV.  DISCUSSION - INEFFECTIVE ASSISTANCE OF PLEA COUNSEL**

As ground one in his federal Petition, Mr. Livingston claims ineffective assistance of his plea counsel, Mr. Ball. The standard governing a constitutional claim of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Williams</u>, 529 U.S. at 365. To obtain habeas relief, a petitioner must establish both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. <u>See</u> <u>Strickland</u>, 466 U.S. at 687, 688, 694; <u>Le v. Mullin</u>, 311 F.3d 1002, 1024-25 (10th Cir. 2002), <u>cert</u>. <u>denied</u>, 540 U.S. 833 (2003). This court "may address the performance and prejudice components in any order, but need not address both if [petitioner]

fails to make a sufficient showing for one." <u>See</u> <u>Cooks v. Ward</u>, 165 F.3d 1283, 1292-93 (10th Cir. 1998), <u>cert</u>. <u>denied</u>, 528 U.S. 834 (1999). A claim of ineffective counsel is a mixed question of law and fact, subject to the AEDPA "unreasonable application of clearly established Federal Law" standard[9]. <u>Cook v. McKune</u>, 323 F.3d 825, 832 (10th Cir. 2003); <u>see</u> <u>e.g.</u>, <u>Williamson v. Ward</u>, 110 F.3d 1508, 1513 (10th Cir. 1997). The Supreme Court has also expressly held that "the (<u>Strickland</u>) test applies to challenges to guilty pleas based on ineffective assistance of counsel." <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985); <u>see</u> <u>United States v. Carter</u>, 130 F.3d 1432, 1442 (10th Cir. 1997). In the context of guilty pleas, the first prong of the <u>Strickland</u> test is "nothing more than a restatement of the standard of attorney competence." <u>Hill</u>, 474 U.S. at 58-59. In evaluating counsel's performance, the court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." <u>Strickland</u>, 466 U.S. at 689; <u>Boyd v. Ward</u>, 179 F.3d 904, 914 (10th Cir. 1999), <u>cert</u>. <u>denied</u>, 528 U.S. 1167 (2000). "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." <u>Strickland</u> 466 U.S. at 689. In order to satisfy the prejudice prong, the "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 58-59; <u>Le</u>, 311 F.3d at 1025 (quoting

---

[9]    Mr. Livingston challenges state court findings that his counsel was not constitutionally ineffective.

<u>id</u>.).

The Supreme Court has also held that when a criminal defendant waives trial by entering a plea, he assumes "the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." <u>McMann v. Richardson</u>, 397 U.S. 759, 770 (1970). The Court cautioned federal courts that even in circumstances where an attorney erred, "[i]t will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that counsel rendered reasonable professional assistance." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 386 (1986); <u>United States v. Smith</u>, 10 F.3d 724, 728 (10th Cir. 1993)(per curiam). A convicted defendant claiming ineffective assistance must identify the acts or omissions of counsel that are alleged to have been below constitutional standards. The court must then determine whether, in light of the circumstances at the time of counsel's conduct, the identified acts or omissions were outside the wide range of professionally competent assistance. <u>Id</u>.

Livingston identifies the following acts or omissions as the factual basis for his claim of ineffective assistance of plea counsel: (1) counsel failed to advise petitioner of his right to speedy trial; (2) counsel failed to move to dismiss for violation of speedy trial; (3) counsel erroneously advised him to plead guilty when he had a meritorious speedy trial claim; and (4)

counsel failed to investigate and interview potential witnesses before and after moving for a continuance, which forced petitioner to waive his right to speedy trial and to plead guilty.

## A. Speedy Trial Issues

The court first examines petitioner's allegations that Mr. Ball "failed to be knowledgeable" regarding the Kansas speedy trial statute, failed to move for dismissal on speedy trial grounds, and failed to inform him of "this (speedy trial) violation" prior to advising him to plead guilty. Respondents contend in their Answer and Return that these allegations are procedurally defaulted because petitioner did not present them to the Kansas appellate courts on either direct or collateral review.

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state court remedies, § 2254(b)(1), thereby giving the State the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, (1995)(per curiam)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). However, if a habeas applicant has failed to properly raise a claim in the state courts, and state judicial remedies are no longer available to adjudicate the claim at the time the federal habeas application is filed, the applicant meets the technical requirements for exhaustion because no state remedies are available. See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). The doctrine of procedural default ensures that a criminal defendant must give the state courts a full and fair

opportunity to address the defendant's constitutional claims before resort is had to federal court. Under the procedural-bar doctrine, "[c]laims that are defaulted in state court on adequate and independent state procedural grounds[10] will not be considered by a habeas court, unless the [applicant] can demonstrate cause and prejudice or a fundamental miscarriage of justice." <u>Fairchild v. Workman</u>, 579 F.3d 1134, 1141 (10th Cir. 2009)(internal quotation marks omitted); <u>Coleman</u>, 501 U.S. at 750. In some circumstances, a federal court has before it a state-court opinion which clearly provides that its decision to deny relief was based on an adequate and independent state procedural rule. However, procedural default may also be found when the petitioner has failed to exhaust state court remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." <u>Id</u>. at 735, FN 1. The issue of procedural bar is before the court in this case because respondents contend that were petitioner to return to state court and attempt to raise these issues, his claim would be denied as procedurally barred under independent state law that is

---

[10]    "For a state rule of procedural default to be 'adequate,' several conditions must be satisfied." First, it "must be applied evenhandedly in the vast majority of cases." <u>Cannon v. Mullin</u>, 383 F.3d 1152, 1172 (10th Cir. 2004). In addition, "a rule is not 'adequate' to bar a claim of ineffective assistance of trial counsel unless the state procedures comply with the imperatives set forth in <u>Kimmelman</u>, 477 U.S. at 365: (1) allowing petitioner an opportunity to consult with separate counsel on appeal in order to obtain an objective assessment of trial counsel's performance and (2) providing a procedural mechanism [on direct appeal] whereby a petitioner can adequately develop the factual basis of his claims of ineffectiveness." <u>Cannon</u>, 383 F.3d 1152, 1172-73 (citation omitted). Livingston was represented by different counsel at every stage of the criminal proceedings as well as the collateral proceedings, and was afforded two evidentiary hearings to develop and prove his claims.

uniformly applied.

In his Traverse, petitioner does not attack the state's procedural bar. Instead, he counters that he diligently attempted to present these claims to the state courts, and argues that all issues in his Petition should be "deemed" exhausted. In support, he describes his efforts as follows. He did not raise the "speedy trial issue" on direct appeal because his appellate counsel Ms. Carr chose to exercise her professional judgment and omit this issue. These issues were first presented in state court in his pro se 1507 brief as a ground for his claim of ineffective assistance of trial counsel. At the hearing on his 1507 motion, the trial judge ruled on the merits that there was no speedy trial violation and denied the claim. He appealed the denial and was appointed counsel, Ms. Yeager, who prepared the Appellant's Brief and mentioned his speedy trial issues in "the statement of facts"[11]. He also filed a pro se motion in the KCOA for permission to file a pro se supplemental brief, which contained this claim. He was later appointed different counsel, Mr. Baker, who filed a "letter of Additional Authority pursuant to 6.09(b)" presenting the speedy trial ground as a basis for his ineffective assistance of counsel claim to the KCOA for the second time. This letter is not in the record, even though it was docketed in the KCOA before their opinion was issued. Livingston additionally alleges that these

---

[11]    In the Appellant Brief on collateral appeal, it was stated that "[d]efendant felt pressure to allow the continuance and so he waived his right to speedy trial," and "[d]efendant argued" in his pro se 1507 motion that he "would not have been forced to waive his right to a speedy trial" had counsel located and interviewed witnesses. Id. at 1, 5.

issues were presented to the Kansas Supreme Court in his brief in support of his Petition for Review.[12]  He thus asserts that his ineffective assistance of counsel claim based on speedy trial issues should be considered exhausted and not procedurally defaulted.

The court finds that the claim that plea counsel was ineffective based upon alleged speedy trial issues was not fully and properly presented to the state appellate courts.  It is uncontroverted that petitioner did not raise any speedy trial issue prior to entering a plea or on direct appeal.  Petitioner is entitled to counsel on direct appeal, but not to have counsel raise frivolous issues or every conceivable issue.  The professional judgment of his appellate counsel on direct appeal to omit these issues effectively waived the issues.

It is also uncontroverted that these issues were first raised in petitioner's pro se state post-conviction motion.  A factual basis for this claim was presented by petitioner in that motion[13], and the claim was discussed and denied at the hearing on

---

[12]    The record contains no brief filed in support of Livingston's Petition for Review.  He apparently is referring to the pro se brief, which he was denied leave to file by the KCOA on November 9, 2007.  In correspondence attached to the Traverse (Doc. 20, Exh. B) dated November 20, 2007, Livingston asked Yeager to amend Appellant's Brief to add the issue of counsel being ineffective for "not using my speedy trial violation as a defense."  Ms. Yeager replied that she had used her "professional judgment" about the issues to raise, and that the arguments he wanted to raise were inconsistent.  Id.

[13]    In his pro se brief in support of his 1507 motion, petitioner alleged that the State had until September 5, 2002, before the statutory time limit of ninety days him expired; and that he was forced to waive his Sixth Amendment constitutional right to a speedy trial so that counsel could investigate the newly endorsed State's witnesses who were the same people his counsel should have already investigated upon his client's earlier request.  He claimed that counsel was ineffective for his incompetent investigation which necessitated the continuance, for not moving to "dismiss count I on the grounds that his client's

22

this motion. Petitioner correctly observes that it was only mentioned in the "Statement of Facts" in his Brief on collateral appeal and was not presented as a claim with a factual basis and legal argument. Although petitioner's appeals contained allegations of ineffective assistance of counsel, different acts and omissions were alleged in support. The argument that plea counsel was ineffective for failing to pursue a speedy trial defense was not included. The court thus concludes that this claim was not properly exhausted.

Petitioner now has no real prospect of obtaining relief in the Kansas courts based on these unexhausted issues. See e.g., State v. Foulk, 195 Kan. 349, 351, 404 P.2d 961, 963 (1965)("[A]ny further attempt to seek the same relief would be a second or successive attempt which is forbidden by 60-1507(c)."); see also Amos v. Roberts, 189 Fed.Appx. 830, 834 (10th Cir. 2006)("Any motion for postconviction relief is now time-barred in state court," citing K.S.A. § 60-1507(f)(1) imposing a one-year limitation period which runs from the termination of direct appellate review, and "this claim is procedurally defaulted."). He may not file a second direct appeal of his conviction. Moreover, the KCOA noted on appeal of his first state post-conviction motion, that such a motion may not be used as a substitute for a second or subsequent

---

right to speedy trial had been violated", and for advising him to plead guilty when he had "a meritorious 90 Day speedy trial claim on Count I at the time of plea." Livingston v. State, Doc. 15 at 5-7 (Nov. 16, 2005). Livingston alleged he was arraigned on June 7, 2002, and that he waived his speedy trial right on August 20, 2002, when "72 of the 90 days under K.S.A. 22-3204 had passed".

appeal (citing Kansas Supreme Court Rule 183(c)(3) and cases therein). <u>Livingston</u>, at *7; <u>see also</u> <u>Brown v. State</u>, 198 Kan. 527, 528, 426 P.2d 49 (1967)(A "proceeding under . . . K.S.A. 60-1507 is not to be used as a substitute for a second appeal"); K.S.A. 60-1507(c)(trial court not required to entertain a second or successive motion). The court finds that petitioner's claim that plea counsel was ineffective based on speedy trial issues is procedurally defaulted. <u>Coleman</u>, 501 U.S. at 729-30.

As noted, in order to overcome procedural default, a federal habeas petitioner must demonstrate either (1) cause for and prejudice from the default, or (2) that not reaching his claims would result in a fundamental miscarriage of justice. <u>Id</u>. at 749-50. The cause standard requires a showing "that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. <u>Id</u>.

Petitioner claims ineffective assistance of appellate counsel as the cause for his failure to present this claim to the Kansas appellate courts. With regard to his direct appeal, a claim that appellate counsel provided ineffective assistance by failing to raise the claim of ineffective trial counsel can, in some circumstances, constitute cause for procedural default. However, the ineffective assistance of appellate counsel claim must be presented to the state courts as an independent claim before it may

24

be used to establish cause. See Murray, 477 U.S. at 489; see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Fleeks v. Poppell, 97 Fed.Appx. 251, 260-61 (10th Cir.), cert. denied, 543 U.S. 933 (2004). Petitioner failed to articulate a claim in state court regarding his direct-appeal counsel. Additionally, he cannot show cause based on an argument that post-conviction appellate counsel either failed to present all claims or ignored his requests to present claims, because it has plainly been held that there is no constitutional right to counsel in collateral proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Thus, a failure of post-conviction counsel resulting in procedural default "cannot constitute cause to excuse default in federal habeas." Coleman, 501 U.S. at 757. The court finds petitioner has not established cause to excuse the procedural bar.

Petitioner's only other means of gaining federal habeas review of his alleged speedy trial issues is a claim of actual innocence under the fundamental miscarriage of justice exception. Herrera v. Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992). To meet this test, a criminal defendant must make a colorable showing of factual innocence. Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000)(citing Herrera, 506 U.S. at 404); see Bousley v. United States, 523 U.S. 614, 623 (1998). Neither petitioner's conclusory assertions of a miscarriage of justice nor this court's review of the record demonstrates that a miscarriage of justice would result if these issues are not heard. Further, ineffective assistance of

counsel in post-conviction proceedings does not constitute a fundamental miscarriage of justice. Demarest v. Price, 130 F.3d 922, 941 (10th Cir. 1997). In any event, "[w]hen questions of procedural bar are problematic, and the substantive claims can be disposed of readily, a federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits." See Cannon, 383 F.3d at 1159.

Even if petitioner's efforts were deemed sufficient to satisfy the exhaustion prerequisite or he had shown cause to overcome his procedural default, he is entitled to no relief on this claim. The court finds that the facts alleged by petitioner do not show that he had a meritorious speedy trial claim. The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Section 10 of the Kansas Constitution Bill of Rights guarantee an accused the right to a speedy trial. State v. Strong, 8 Kan.App.2d 589, 591, 663 P.2d 668, 671-72 (Kan.App. 1983); State v. Montes-Mata, 41 Kan.App.2d 1078, 208 P.3d 770 (Kan.App. 2009). In Kansas, the Legislature adopted K.S.A. 22-3402 "to define and implement these constitutional guarantees to a speedy trial." Strong, 8 Kan.App.2d at 672. Petitioner bases his speedy trial claims on K.S.A. 22-3402, which provides:

> If any person charged with a crime and held in
> jail solely by reason thereof shall not be brought
> to trial within 90 days after such person's
> arraignment on the charge, such person shall be
> entitled to be discharged . . . . unless the delay
> shall happen as a result of the application or
> fault of the defendant, or a continuance shall be

ordered by the court under subsection (5).

Id. Subsection (3) provides:

> If any trial scheduled within the time limitation
> prescribed by subsection (1) or (2) is delayed by
> the application of or at the request of the
> defendant, the trial shall be rescheduled within
> 90 days of the original trial deadline.

Id. Petitioner ignores that delays which are the result of the application or fault of the accused are not counted in computing the statutory speedy trial period. State v. Bafford, 255 Kan. 888, 879 P.2d 613 (Kan. 1994)(citing State v. Green, 254 Kan. 669, 672, 867 P.2d 366 (1994)). "Such delays include those which result from a continuance granted at the request of the defendant." Id.; State v. Vaughn, 288 Kan. 140, 144, 200 P.3d 446 (Kan. 2009)("A defendant waives his right to a speedy trial under the statute if he requests a continuance or files a motion that delays the trial beyond the statutory deadline."). Actions of defense counsel are attributable to the defendant in computing speedy trial violations unless the defendant timely voices his or her disagreement with those actions. See State v. Brown, 249 Kan. 698, 704, 823 P.2d 190 (1991); State v. Brown, 34 Kan.App.2d 746, 754, 124 P.3d 1035 (Kan.App. 2005), aff'd 283 Kan. 658, 157 P.3d 624 (2007)("[A]ny delay caused by the judge granting the defendant's motion to continue the jury trial is the result of the application of the defendant, and pursuant to K.S.A. 22-3402(1), the delay from the date the judge granted Brown's motion for continuance of trial until the rescheduled trial date was chargeable against the defendant for speedy trial purposes.").

As noted, petitioner alleges in support of this claim that he was arraigned on June 6, 2002, and pled guilty on October 21, 2002. The docket sheet indicates Mr. Livingston was arraigned on June 7, 2002, and thus, the speedy trial clock began running on that date on the first degree murder charge. Trial was originally scheduled for August 26, 2002, which was within the ninety-day statutory limit. The delay in this case was occasioned because a few days before this trial date the State endorsed additional witnesses and defense counsel moved for and was granted a continuance.[14] Defendant's motion for continuance was granted on August 20, 2002, and the trial was reset for October 21, 2002. Under Kansas law, this delay is charged to Mr. Livingston. The 74-day period chargeable to the State was well within the statutory limits. Moreover, the record indicates and petitioner has alleged that he waived his right to a speedy trial in court at the time the defense moved for a continuance. It follows that Livingston's statutory right to trial within ninety days was not violated.

Mr. Livingston makes no real effort to allege facts showing a violation of his federal constitutional right to speedy trial. The total time from arraignment to his plea was around four and one-half months. In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court set out a balancing test for determining whether the Sixth Amendment right to a speedy trial has been violated. The

---

[14]    From June 7, 2002, to August 20, 2002, is a total of 74 days. By Livingston's own calculations, 74 days of the ninety-day period had passed at the time his counsel moved for a continuance. Traverse (Doc. 20) at 4.

factors to be balanced are: the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Id. at 530. The length of delay is given first consideration, and only when the length of delay is presumptively prejudicial should the court consider the remaining factors. Id. If the length of the delay is not presumptively prejudicial, the court need not consider the other factors of the test. Barker, 407 U.S. at 530; Smallwood, 264 Kan. at 75.

The length of the delay in this case is clearly not presumptively prejudicial. Courts in this Circuit have found that much longer delays were not presumptively prejudicial. See U.S. v. Dirden, 38 F.3d 1131, 1138 (10th Cir. 1994)(seven and one-half month delay); U.S. v. Kalady, 941 F.2d 1090, 1096 (10th Cir. 1991)(eight-month delay); U.S. v. Gomez, 67 F.3d 1515 (10th Cir. 1995)(twelve and one-half month delay); see also State v. Hill, 257 Kan. 774, 779, 895 P.2d 1238 (Kan. 1995)(less than eleven-month delay); Goss, 245 Kan. 189, 193, 777 P.2d 781 (Kan. 1989)(little over one-year delay). It follows that there is no need to consider the additional Barker factors.

Even if the delay in this case were presumptively prejudicial, petitioner does not allege facts showing the other Barker factors weigh in favor of finding a violation of his constitutional right to a speedy trial. Though an assertion of the right is not mandatory (Barker, 407 U.S. at 528), the failure of a defendant to do so makes it difficult for him to prove that he was denied his constitutional right. The record reveals that

petitioner did not assert his objections to the delay until after he had entered a plea of guilty and not in any meaningful way until state post-conviction proceedings.

In <u>Barker</u>, the Court stated that prejudice must be analyzed in terms of the interests of the defendant. The Court identified three such interests: (1) the prevention of oppressive pretrial incarceration; (2) the minimizing of anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. <u>Id</u>. at 532; <u>Jackson v. Ray</u>, 390 F.3d 1254, 1264 (10th Cir. 2004)(citing <u>id</u>.). Petitioner describes none of these interests and how it was prejudiced in his case[15]. The court concludes that petitioner's Sixth Amendment right to a speedy trial was not violated.

In his Traverse, petitioner claims that he was "coerced into relinquishing his Sixth Amendment right to a speedy trial" and it was "solely due to Mr. Ball stating that it was imperative that he interview the states' witnesses." He alleges he was "totally against" such "maneuvers" but counsel said it was necessary because these witnesses had not given "any police statements or sworn testimony." However, he also states that "all parties" were aware that "to be properly prepared to defend the petitioner", trial counsel would have to ascertain the anticipated testimony of the endorsed witnesses. He further alleges that prosecutor Rhodes

---

[15]     The prejudice petitioner claims is that he would have started trial on August 26, 2002, facing only one felony charge instead of three. However, he does not explain why the other charges would have vanished when the endorsement of witnesses had been allowed and an amended information had been filed.

assured the court when the late endorsement and continuance were granted that he would "relentlessly assist in the production of its witnesses for discovery purposes." Petitioner seems to suggest that plea counsel denied his right to a speedy trial by moving for a continuance of the first scheduled trial date. However, he does not allege facts showing there had already been a speedy trial violation at the time, and the record does not support his bald contention that the continuance was not in good faith. None of these allegations establishes that Mr. Livingston had a "clearly meritorious" speedy trial claim.

Petitioner's additional allegations – that Ball was incompetently unaware of the speedy trial violation and failed to move for a dismissal based thereon, failed to advise him of this "viable defense", erroneously advised him to plead guilty when the court lacked jurisdiction to accept his plea, and that he would not have pled guilty had he known the "court lost subject matter" jurisdiction – are all without merit, given that petitioner's claim of a speedy trial violation has no merit.

Lastly, the court notes that even though petitioner claims he was not aware and his counsel did not inform him of his right to a speedy trial, the trial court in accepting his plea specifically informed him that by pleading guilty, he waived any right to a speedy trial. Moreover, he acknowledged in his written plea agreement that he had a right to speedy trial, and knew he was waiving that right.

In short, Mr. Livingston's constitutional right to a speedy

trial was not violated, and he has therefore failed to establish that his trial counsel's performance fell below an objective standard of reasonableness based upon the asserted speedy trial issues.  Strickland, 466 U.S. at 687.

### B.  Failure to Investigate Witnesses

The other acts and omissions on which petitioner bases his claim in federal court that plea counsel was ineffective are counsel's failure to locate and discover or compel the testimony of three potential witnesses: L. Dozier, L. Browning and B. Browning. Even though petitioner sometimes refers to State's witnesses in general, this claim is clearly limited to counsel's failure to locate and discover the testimony of these three persons[16]. Respondents argue that this claim was not presented to the state courts.  However, this court finds otherwise, and accordingly reviews this claim under the AEDPA standards.

The court finds the following facts relevant to this claim. Mr. Livingston gave the names of these three potential witnesses to Mr. Ball during pre-trial investigation and suggested they could testify that they heard "on the street" or through "the grapevine" that Livingston shot Crockett in self-defense and/or that they

---

[16]    In his Traverse, petitioner alleges that the reason for the continuance was to investigate the State's witnesses, not the petitioner's alibi defense witnesses.  This is somewhat disingenuous, given that these three late-endorsed State's witnesses were the same three individuals he had earlier asked his attorney to locate as potential witnesses for the defense.  Petitioner is correct that he never claimed to have an alibi, if that is his point.

heard this from Livingston shortly after the killing[17].  Mr. Ball advised him at the time that since these three persons were not eyewitnesses what they "heard" would be inadmissible hearsay.  At the post-conviction evidentiary hearing on petitioner's claim of ineffective assistance of plea counsel, Mr. Ball testified that he had hired a full-time, experienced investigator and spent a considerable sum of money attempting to locate these witnesses in particular and any others, without success.  He also testified that people were unwilling to talk to them about the shooting incident. Mr. Livingston testified that he provided the names and addresses of these witnesses[18], but Ball testified only names were provided. The week before trial was scheduled, Ball informed Livingston that he had tried but was unable to locate the three potential witnesses.  That same week the State filed a motion to endorse several witnesses, and the three persons Mr. Livingston faults his attorney for failing to locate as possible defense witnesses turned up on that list.

Petitioner attempts to paint his counsel's inability to locate these potential witnesses as a failure to make reasonable

---

[17]     At the hearing on his 1507 motion, Livingston testified that he saw these three persons about an hour after the crimes, and "they had heard that I killed dude and that I had told them I was defending myself, that them guys was trying to kill me and they had heard something like that, and they probably confirm that they heard something like that." State v. Livingston, Vol. VII, at 25.  Petitioner has been given ample opportunity to allege or testify as to what evidence these witnesses might have provided.

[18]     Petitioner has not included the addresses he allegedly provided for these three individuals in any of his filings.  Nor does he suggest that he made any attempt to contact these individuals, who were his acquaintances, such as by phone or mail, to ascertain their location or request their cooperation with his counsel.

effort or a decision to make no effort.  He alleges no facts in support, but assumes that the State's apparent success in locating these persons proves that Ball's efforts were not reasonable. Conclusory allegations without supporting factual averments are insufficient to support a claim of ineffective assistance of counsel.  See U.S. v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1004). While defense counsel undoubtedly has a duty to interview potential witnesses, if he has made a good faith effort and is unable to establish contact, his performance was not incompetent.

The KCOA found Livingston had claimed ineffective assistance of plea counsel on direct appeal, and was at that time "clearly" aware of "the facts underlying the specific claim of ineffective assistance he now raises." Livingston v. State, at *7. They then cited authority that a K.S.A. 60-1507 motion "may not be used as a substitute for a second or subsequent appeal" (citation omitted), and found Livingston "has not asserted any exceptional circumstances excusing his failure to raise all of his ineffective assistance of counsel claims in his first appeal." Id.  However, they also found Mr. Ball's testimony regarding his investigative efforts were more credible than Livingston's.  They held that "substantial competent evidence supports the district court's factual finding that Livingston's plea counsel was not ineffective for failing to locate and identify witnesses" (Id. at *8), and noted the finding that counsel had made a good faith effort.  In reaching their conclusions, the KCOA discussed evidence presented prior to sentencing at the hearing on Livingston's motion to

withdraw plea.  Id. at *2-*3.  They noted that after conducting an
evidentiary hearing:

> [T]he district court found Livingston's plea
> counsel acted prudently in attempting to locate
> and speak to the witnesses.

Id. at *4-*5.  These state court findings of fact are supported by
the record and are presumptively correct.  Petitioner has not
presented clear and convincing evidence to the contrary.

Petitioner makes the conclusory statement that counsel
never contacted or interviewed any of the State's witnesses.  The
specific testimony of Mr. Ball was that he studied the available
police reports and witness statements of potential witnesses, and
the record shows he filed a Motion for Production of any statements
of the late-endorsed witnesses.  Petitioner's own allegations
indicate the State agreed to facilitate defense counsel's discovery
of information on the newly endorsed witnesses.  The record refutes
petitioner's charge that counsel made a tactical decision to forego
investigation of the three potential witnesses in particular, and
the State's witnesses in general.

Moreover, Mr. Livingston has never adequately described the
substance of the testimony that he expected from the three persons
he tabbed as potential defense witnesses.  As the KCOA noted and
the district court found, he has thus "not shown that these
witnesses, had they testified, would have had any effect on the
outcome of the case."  Id. at *5, *9.  Petitioner utterly fails to
allege facts establishing that these potential witnesses would have
been favorable to the defense, or that failing to discover the

actual substance of their testimony prejudiced the defense. Nor has he alleged any facts indicating their testimony would have amounted to anything other than inadmissible hearsay. <u>Id</u>. at *9. The court concludes that the decision of the Kansas appellate court on this issue did not result in a decision that was contrary to, or involved an unreasonable application of, <u>Strickland</u>.

This court has independently reviewed the record as a whole in determining petitioner's claim of ineffective assistance of plea counsel. A state-court decision is accorded AEDPA deference if the state court rejected the claim under a standard either identical to or more favorable to the applicant than the federal standard. <u>Patton v. Mullin</u>, 425 F.3d 788, 795 (10th Cir. 2005). The KCA in petitioner's case clearly applied a standard substantially similar to that in <u>Strickland</u>. Accordingly, the KCA's adjudications of Mr. Livingston's claims of ineffective assistance of counsel claim are considered under AEDPA's deferential standard, and this court is limited to determining whether that adjudication was an unreasonable application of <u>Strickland</u> and <u>Hill</u>.

The KCOA reasoned in petitioner's case that nothing in the record indicated Ball's discussions with Livingston "were inconsistent with what is expected of a competent attorney." This court agrees, and remarks that distressful decisions often must be made by a defendant in a criminal case, and defense counsel has no duty to make the defendant feel good about the case. Rather, his or her duty, is to provide the client with professional advice and representation. Mr. Ball's advice to his client was entirely

reasonable. The agreement dropped the charge of first degree murder to second degree, dropped the count of attempted first degree murder of another victim altogether, and included that the prosecution would recommend concurrent sentences on the two remaining counts. The materials in the file show that Mr. Livingston was facing a first-degree murder charge with a possible Hard-50 sentence recommendation, that he had admitted the killing to police in a video-taped interview, that he had no favorable witnesses other than himself[19], that eyewitnesses to the killing had been subpoenaed by the State to testify at trial, that there was no question with regard to his identity as the killer or suggestion of an alibi defense, and that he was also charged with the attempted first degree murder and aggravated robbery of another person at the scene who had testified at a preliminary hearing and had been subpoenaed to testify against him at trial. There is simply no doubt that Mr. Livingston was correctly informed and competently advised by his counsel that "it was not looking good" and he should seriously consider the plea agreement offered by the State.

Mr. Ball testified at the hearing on defendant's Motion to Withdraw Plea that he had been an attorney for 26 years and had participated in over four hundred trials, including five murder

---

[19] Mr. Livingston never spells out here or in state court what defense he would have presented had he gone to trial, though he believed it was a good one and he would have no trouble convincing the jury of it. Arguments on the State's motion in limine, Ball's testimony at the post-conviction hearing, and Appellant's Brief on collateral appeal suggest that the house where the murder occurred was a "known drug house" where guns could be found and Livingston believed that the murder victim either was involved in a contract to kill him or was going to kill him. Thus, his defense was going to be justifiable homicide or self-defense.

trials to a jury.  <u>State v. Livingston</u>, Vol. VI at 51, 65.  He testified that he and his investigator/trial assistant tried to find any witness "that would be able to testify or give us leads" as to what happened,  "accusations" that certain people were lying, and that others were trying "to kill (Livingston) over some prior incidents."  He also testified that they had gone over statements in the case and were continually going over the "statement Adrian made" for possible inconsistencies.  Mr. Ball testified that very early on he talked to Livingston about a plea and there was no interest, so "we never proceeded any other way than we would try it" (<u>id</u>. at 54), and that on the morning of trial he believed he would be trying the case and was ready for trial[20].  He testified he discussed with his client what the State's evidence would be, what the defense evidence would be, and counsel's opinion as to what they could do with that evidence.  The record demonstrates that counsel competently conducted timely pretrial proceedings, filed pertinent motions, and made reasoned arguments on Livingston's behalf.  Counsel testified that in his opinion there was a "real chance" Livingston "could be convicted of first degree" and "the Hard 50 was a very real possibility".  He stated his reasons for that belief, including his observation that the parole board generally did not grant parole on the first application to

---

[20]     Mr. Ball testified that he had cleared his calendar for the trial; had done as much preparation as he ever had on "any civil plaintiff or defense case" or for any corporate defendant; had accumulated over 300 voir dire questions; had studied the lengthy confession; had gone through "stuff" and made notes; and had done everything he could to prepare the case for trial."  <u>Id</u>. at 67-68.

persons convicted of first degree murder. _Id_. at 59-60. Mr. Ball further testified that he absolutely discussed the maximum possible penalties with Livingston, showed him the sentencing grid, and that Livingston understood the penalties he was facing. _Id_. at 62-64. In addition, he testified that he did not pressure or coerce Mr. Livingston to plead guilty. _Id_. at 64-65. He testified that he raised the plea offer on the morning of trial because he was asked to and that he "laid out" the circumstances but told Mr. Livingston it was his, not counsel's, decision. _Id_. at 69. Mr. Ball testified that when he explained the offer that morning, Mr. Livingston did not ask one question, but looked at him and stated he thought they'd better take the plea. _Id_.

The court's review of the record has thus shown that Mr. Ball provided effective assistance of counsel. The purpose of the effective assistance guarantee of the Sixth Amendment is to ensure that criminal defendants receive a fair trial so that the outcome of the proceeding can be relied upon as the result of a proper adversarial process." _Strickland_, 466 U.S. at 691-92. Petitioner does not describe instances of ineffective assistance other than the allegations of failure to pursue and advise of a non-existent speedy trial violation and failure to discover the location or compel the testimony of three potential defense witnesses who ended up on the State's witness list. The record reveals that Mr. Livingston professed at the plea proceeding and in writing that he had consulted with counsel and was satisfied with the assistance he had received. The court concludes that the state-court

adjudication of petitioner's claim of ineffective assistance of plea counsel was not an unreasonable application of <u>Strickland</u> and <u>Hill</u>.

## V.  PLEA NOT KNOWING OR VOLUNTARY

As ground two, petitioner claims his plea was not intelligently and voluntarily made.  The only factual support for this claim is his allegation that he was not advised of "the viable defense", again citing the Kansas speedy trial statute.  He repeats his allegations from ground one that counsel failed to be aware and inform him of a violation of speedy trial defense prior to advising him to plead guilty and failed to move for dismissal based thereon.

The court finds that this claim has the same underlying basis as ground one, namely that petitioner had a viable speedy trial claim.  Since petitioner procedurally defaulted any speedy trial issues and had no viable speedy trial claim, this ground is equally without merit.

## VI.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

As ground three, petitioner claims "ineffective assistance of appellate counsel."  In support of this claim he alleges that, not just appellate but, all counsel appointed after he pled guilty were ineffective for failing to raise his claims of ineffective assistance of plea counsel and "any of the other issues" raised in his pro se 60-1507 motion that are now procedurally defaulted.  His

arguments that these counsel were ineffective are mainly based upon
his overarching misconceptions that he had a "plainly meritorious"
claim of a speedy trial violation that they failed or refused to
pursue and that raising it "would have led to his case being
overturned." Petitioner states that "[e]very attorney chose to use
their professional judgement (sic) to omit this issue."

        Livingston specifically argues in his Traverse that Mr.
Dent provided ineffective assistance at the hearing on motion to
withdraw plea and at sentencing. In support of this claim, he
alleges that Dent failed to bring the speedy trial violation to the
court's attention and move for dismissal based thereon prior to the
court's acceptance of his plea. He claims that Ms. Carr, counsel
appointed to represent him on direct appeal, was ineffective for
failing to raise "the issue of ineffective assistance of (plea)
counsel and other issues that were raised in the K.S.A. 60-1507
brief." He claims that Mr. Sedgwick, appointed to represent him at
the hearing on his 1507 motion, was ineffective in that he "failed
to amend" the 1507 brief "to include ineffective assistance of
Dent"; failed to "investigate the facts and law pertaining to brief
prior to hearing"; and failed to make an adequate record of facts
supporting the issues in the brief including: (1) the events of
August 20, 2002, and the endorsement of State witnesses, (2) Judge
Burdette's pretrial ruling that potential witness testimony was not
hearsay, but "reliable and admissible against petitioner", (3) the
grounds for the continuance that resulted in waiver of his right to
trial within ninety days, and (4) "the speedy trial violation

itself" along with Ball's failure to inform him of it and move for dismissal before advising him to plead guilty[21]. Petitioner claims that Ms. Yeager, counsel appointed to represent him on his post-conviction appeal, was ineffective in that she only mentioned his "speedy trial" grounds for ineffective assistance of trial counsel in the statement of facts in Appellant's Brief and failed to present arguments and authorities in support. He claims she also failed to raise the issue of Judge Boeding's hearsay ruling in post-conviction proceedings. In addition, he claims Yeager failed to inform the KCOA that petitioner had attempted to raise the ineffective assistance of counsel issue in a pro se supplemental brief submitted but denied in May 2004.[22]

Mr. Livingston acknowledges that he did not raise these claims on either direct appeal or in his post-conviction motion and alleges they "developed during the appeal process." He states that the ineffective assistance of these other counsel "is brought before the court" for "exhaustion purposes," to demonstrate cause and prejudice and exceptional circumstances, and that these counsel caused any procedural default. Nevertheless, he also claims that omissions by these counsel of his speedy trial claim amounted to deficient performance. He makes the bald assertion that to declare

---

[21] He also claims that Mr. Sedgwick failed to perfect the appeal causing a one-year delay in the appeal process, but alleges no facts indicating that he was prejudiced as a result.

[22] Petitioner also claims that Mr. Baker, "substitute post conviction appellate counsel" appointed after briefs were filed during his collateral appeal to the KCOA, was ineffective in that he failed to inform petitioner that his Petition for Review had been denied on September 22, 2008. No prejudice is alleged in connection with this claim.

"the aforementioned issues" unexhausted and not address them on the merits would be a "miscarriage of justice."

The court finds that these claims of ineffective assistance of counsel were not presented in the state courts. As a result, none can be used as "cause" to excuse petitioner's procedural default of any underlying claims. Moreover, appellate counsel's professional decision to omit an issue on appeal is attributable to the defendant, and without more, does not excuse procedural default of that issue. Although "indigents generally have a right to counsel on a first appeal", that right "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." Smith v. Robbins, 528 U.S. 259, 278 (2000)(citations omitted).

In addition, the court notes that none of petitioner's claims specified as omitted by these counsel has merit. "When considering a claim of ineffective assistance of appellate counsel for failing to raise an issue" the court "looks to the merits of the omitted issue." Hooks v. Ward, 184 F.3d 1206, 1221 (10th Cir. 1999); Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." Id. (citing Cook, 45 F.3d at 392-93); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998), cert. denied, 525 U.S. 1151 (1999). Unless there is a reasonable probability that the omitted claim would have resulted in petitioner obtaining relief on appeal, there is no ineffective assistance of appellate

counsel under the Sixth Amendment. <u>Neill v. Gibson</u>, 278 F.3d 1044, 1057 FN 5 (10th Cir. 2001), <u>cert</u>. <u>denied</u>, 537 U.S. 835 (2002). Because Mr. Livingston had no viable speedy trial claim, counsel representing him on direct appeal was not incompetent for failing to raise speedy trial issues.

Furthermore, as already noted, ineffective assistance of counsel in post-conviction proceedings cannot serve as cause to overcome procedural default. Nor is "the ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings" a ground for federal habeas corpus relief. 28 U.S.C. § 2254(i). The court concludes that this claim does not entitle petitioner to federal habeas corpus relief.

## VII. CLAIM THAT JUDGE ABUSED DISCRETION WITH HEARSAY RULING IN POST-CONVICTION PROCEEDING

Petitioner claims that Judge Boeding abused his discretion by declaring at the hearing on his state post-conviction motion that the testimony of the three potential witnesses first sought by Livingston and later endorsed by the State would be inadmissible hearsay.[23] In support, he alleges this was contrary to the prior

---

[23] No record is provided of the hearing on the State's Motion to Endorse. However, since these three potential witnesses were never actually called to testify in court, no state judge ruled that their actual testimony was or was not inadmissible hearsay. Instead, the State was merely allowed, pretrial, to add these three persons to their list of potential State witnesses. Judge Boeding's opinion in post-conviction proceedings that their testimony, as characterized by petitioner, would have been hearsay, was simply a finding corollary to his ruling that petitioner had not shown prejudice. Neither finding was a ruling sustaining or denying a hearsay objection to testimony presented by any of these individuals at a court proceeding.

ruling on August 20, 2002, of Judge Burdette on the State's motion to endorse witnesses that their testimony was not hearsay and was admissible against the defendant. He characterizes Judge Boeding's statement as "an unreasonable determination of the facts in light of the evidence presented."

Petitioner acknowledges that he did not raise this claim either on direct appeal or collateral appeal, and alleges it "developed during post-conviction relief".[24] He responded to questions in the Petition regarding exhaustion of this ground that Sedgwick, Yeager, Baker and "all appellate attorneys" neglected to know abut this error and did not raise this issue.

The court finds, in accord with standards previously set forth herein, that this claim was unexhausted at the time this Petition was filed. The court further finds that this claim is procedurally defaulted and federal reviewed is barred because petitioner failed to raise it in his collateral appeal, and he provides no basis for a finding of cause and prejudice or a fundamental miscarriage of justice. The court also notes that this claim does not appear to implicate the validity of petitioner's conviction.

## VIII.  DENIAL OF COPIES OF TRANSCRIPTS

Petitioner has repeatedly complained in the state court and before this court that he has been denied copies of transcripts

---

[24]     Petitioner delineates this as an issue he attempted to raise by supplemental pro se brief denied on November 14, 2007.

from his state criminal and post-conviction proceedings. In particular, he alleges that Carr failed to provide him with transcripts, Mr. Sedgwick failed to "comply with Judge Boeding's order to provide the petitioner with the specified missing copies of the record needed to pursue his appeal", and that Mr. Baker failed to comply with the state court's order of April 25, 2007, to provide petitioner with "the requested copies of transcripts". He makes the conclusory statement that his efforts to present his habeas corpus claims have been impeded.

The record contains orders regarding transcripts to be provided, but those orders do not require that Mr. Livingston be personally provided with a free copy. Instead, the orders indicate his appointed counsel were provided with copies of necessary transcripts. In any event, the state court's failure to rule on a motion or someone's failure to adhere to a state court order are matters for the state court. Moreover, filings by Livingston have copies of transcript excerpts and it is apparent that he and his counsel have had access to the state court records. Mr. Livingston was provided with appointed counsel, which was an acceptable alternative to providing him with a separate free copy of the state court record. This court noted in its prior order that petitioner had not adequately explained why he needed to possess or provide transcripts to file a habeas corpus action in either state or federal court. He has not made any additional allegations showing a particularized need or an actual impediment to litigating his claims. This claim is not grounds for federal habeas corpus

46

relief.

## IX.  SUMMARY

In sum, the court finds that the Kansas courts'
adjudication of petitioner's claims of ineffective assistance of
counsel were not an unreasonable application of <u>Strickland</u> and <u>Hill</u>
or any other controlling federal law, and that the facts found by
the state courts in making their determinations are supported by
the record.  Petitioner's other claims are either procedurally
defaulted or have no merit.  The court concludes that Mr.
Livingston is not entitled to relief under § 2254, and his petition
shall be denied.

**IT IS THEREFORE ORDERED BY THE COURT** that petitioner's
motion for stay and abeyance (Doc. 3) is denied.

**IT IS FURTHER ORDERED** that Mr. Livingston's petition for a
writ of habeas corpus pursuant to § 2254 (Doc. 1) is denied.

**IT IS FURTHER ORDERED** that petitioner's motion for
extension of time (Doc. 19) is denied as moot.

**IT IS SO ORDERED.**

Dated this 10th day of March, 2010, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge